**SCHERING CORPORATION, Appellant,**

v.

**Walter K. GIESECKE et ux, Appellees.**

**No. 5292.**

Court of Civil Appeals of Texas,
Eastland.

Oct. 18, 1979.

Rehearing Denied Nov. 15, 1979.

Alice Giessel and Henry P. Giessel, Talbert, Giessel & Stone, Houston, for appellant.

John L. Russell, Ragan, Russell & Rorschach, Pearson Grimes, Butler, Binion, Rice, Cook & Knapp, George E. Pletcher and Rod Steinburg, Helm, Pletcher, Hogan & Burrow, Otway B. Denny, Jr. and Jerry V. Walker, Fulbright & Jaworski, Houston, Preston Shirley, Mills, Shirley, McMecken & Eckel, Galveston, for appellees.

McCLOUD, Chief Justice.

Plaintiffs, Walter K. Giesecke and wife, Jean A. Giesecke, were granted a $200,000 judgment against defendant, Schering Corporation, based on jury findings that Schering failed to give an adequate warning regarding the use of its drug, "Garamycin." Schering appeals. We reverse and remand.

Walter K. Giesecke was admitted to Angleton-Danbury Hospital on October 22, 1971, by Dr. Holt, who on that date performed surgery on plaintiff and discovered plaintiff had a ruptured diverticulum of the colon. Dr. Holt repaired the colon and prescribed Keflin and Penicillin. Dr. Holt called in Dr. Edwards, a physician specializing in general surgery in Brazoria County, for his opinion on plaintiff's post-operative care. On October 25, Dr. Edwards prescribed Garamycin. Plaintiff's condition worsened and a second surgery was performed by Dr. Edwards on October 28. At that time, it was discovered that the original suture had broken down. Plaintiff had developed peritonitis. Dr. Edwards performed a partial colectomy. The abdomen was "washed" with an antibiotic solution containing "Kanamycin." The abdomen was closed, catheters were installed in the upper and lower areas of the cavity, and a Kanamycin solution was dripped through the upper catheter and allowed to drain out of the lower one. During this time, Garamycin was being administered by injections. Plaintiff's kidney function was being monitored by measuring his urinary output. Plaintiff was given an injection of Garamycin at approximately 9:30 a. m. on October 31. At approximately 5:30 p. m. that same day, plaintiff suffered an acute renal failure, at which time a diuretic, "Lasix," was administered. Plaintiff's condition continued to worsen. On November 4, he was transferred to John Sealy Hospital in a coma suffering from severe uremic poisoning. He was given hemodiolysis treatments to cleanse his blood of the uremic poison. Mr. Giesecke subsequently regained consciousness and was found to be totally deaf. Further testing confirmed a total and permanent loss of hearing.

Plaintiffs originally sued Doctors Holt and Edwards, Angleton-Danbury Hospital, and Schering Corporation. Plaintiffs alleged that the doctors failed to meet minimum standards of professional care in a number of ways, including the prescribing of "potent antibiotic" drugs. Plaintiffs alleged that Schering failed to give adequate warnings as to the danger of its drug Garamycin. In the prayer of plaintiffs' original petition, they sought a joint and several judgment against all defendants. Doctors Holt and Edwards paid plaintiffs $265,000 in settlement prior to trial. Plaintiffs and Schering agreed to an order dismissing the hospital. Plaintiffs then filed their first amended original petition suing only Schering for failure to give an adequate warning of the danger involved in using Garamycin. Schering sought a "credit" for the amount of the settlement and indemnity and contribution from Dr. Edwards and Dr. Holt. The jury found Schering liable for plaintiff's "loss of hearing" and awarded damages of $200,000. Schering moved for a take-nothing judgment, arguing that the amount of the doctors' settlement exceeded the award by the jury. Schering's motion was denied. There was no finding of negligence against either Dr. Edwards or Dr. Holt.

Both Kanamycin and Garamycin belong to a class of drugs known as Aminoglycosides and are effective in combating gram-negative infections. Both are broad spectrum bacterial agents, and both are eliminated through the kidneys. Garamycin and Kanamycin are potentially ototoxic (affecting hearing and/or balance) and nephrotoxic (affecting the kidneys).

The jury found that Schering failed to give an adequate warning to Dr. Edwards with respect to the use of Garamycin, and that such failure to warn was a producing cause of plaintiff's total and permanent hearing loss. The jury also found that such failure to adequately warn was negligence and a proximate cause of plaintiff's hearing loss. The jury further found that Schering represented to Dr. Edwards that Garamycin would cause only temporary partial hearing loss; that such representation was false;

that Dr. Edwards relied on the representation; and that Dr. Edward's reliance was a producing cause of Walter K. Giesecke's total and permanent hearing loss.

■ Schering contends the judgment should be reversed and rendered in its favor because there is no evidence to support the jury's findings. In deciding Schering's no evidence points, we must review the evidence in its most favorable light, considering only the evidence and inferences which support the findings, and rejecting the evidence and inferences contrary to the findings. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 (Tex.1974).

■ Schering had a duty to give an adequate warning if it knew or should have known of a potential harm to a user because of the nature of its product. *Bristol-Myers Company v. Gonzales*, 561 S.W.2d 801 (Tex.1978); *Crocker v. Winthrop Laboratories, Division of Sterling Drug, Inc.*, 514 S.W.2d 429 (Tex.1974).

■ Doctors Gribble and Mathis testified that neither the 1971 bound volume of the Physicians' Desk Reference, the 1971 supplement, nor an advertisement by Schering in a medical journal warned of the possibility of permanent deafness. There is evidence that, prior to marketing Garamycin in 1971, Schering had evidence that the ototoxicity caused by Garamycin could lead to permanent hearing loss. There is evidence that Schering failed to adequately warn about the need for tests to monitor renal and eighth nerve function. There is evidence that Schering failed to properly warn about the danger of using concurrently other neurotoxic drugs. Kanamycin, a potentially neurotoxic drug, was used as a "wash" at the time of the second surgery. There is evidence that the warning given by Schering did not encompass a situation where the other neurotoxic was being used as a wash. There is evidence that Schering's warning on the "concurrent" use of diuretics and Garamycin was not violated because the diuretic, Lasix, was not given until after the Garamycin had been discontinued. There is medical testimony to sup-

port the producing cause and proximate cause findings. There is evidence that Schering represented to Dr. Edwards that Garamycin would cause only temporary partial hearing loss and that such representation was false. We hold there is some evidence to support the jury's findings. Schering's no evidence points are overruled.

Schering argues it is entitled to a take-nothing judgment after applying the $265,000 credit paid in settlement by Doctors Holt and Edwards, since the amount paid exceeds the $200,000 in damages awarded by the jury. The settlement agreement was in evidence only as a "court exhibit." Plaintiffs' sustained objection prevented the settlement from being considered by the jury. Schering asserts this was error.

Plaintiffs urge that since their pleadings and evidence show that separate torts were committed by the alleged tortfeasors, which resulted in separate injuries, it was necessary for Schering, in order to receive a "credit" from the prior settlement, to obtain jury findings that Dr. Holt and Dr. Edwards were true joint tortfeasors whose negligence was a proximate cause of Mr. Giesecke's total and permanent hearing loss. We disagree. We point out that we are concerned on this appeal with a "credit" and not a proportionate reduction. See *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764 (Tex.1964). The language therefore, cited and relied on by plaintiffs from *Leong v. Wright*, 478 S.W.2d 839 (Tex. Civ.App.—Houston (14th Dist.) 1972, writ ref'd n. r. e.) is not controlling.

Plaintiffs sought a joint and several judgment against all defendants in their original petition. We agree with plaintiffs that the specific allegations should control over the general and that a fair reading of the original petition shows that some of the alleged injuries were distinct or divisible. Certain allegations of medical malpractice were made against the doctors resulting in injuries unrelated to Mr. Giesecke's loss of hearing. Nevertheless, it is clear that plaintiffs alleged that Schering, Dr. Holt, and Dr. Edwards were each jointly and severally liable for Mr. Giesecke's loss of hearing.

The rule is well established that a plaintiff is entitled to but one satisfaction for an injury. *Bradshaw v. Baylor University*, 126 Tex. 99, 84 S.W.2d 703 (Tex. Comm'n App.1935, opinion adopted); *T. L. James & Co., Inc. v. Statham*, 558 S.W.2d 865 (Tex.1977); *Deal v. Madison*, 576 S.W.2d 409 (Tex.Civ.App.—Dallas 1978, writ ref'd n. r. e.). Also, a non-settling tortfeasor is entitled to a credit for the amount paid the injured plaintiff in compensation of a claim for an injury, as distinguished from payments from collateral sources such as insurance, whether or not the party making the payment is liable to the injured person. *McCrary v. Taylor*, 579 S.W.2d 347 (Tex.Civ.App.—Eastland 1979, writ ref'd n. r. e.); *Petco Corporation v. Plummer*, 392 S.W.2d 163 (Tex.Civ.App.— Dallas 1965, writ ref'd n. r. e.); *Skyline Cab Company v. Bradley*, 325 S.W.2d 176 (Tex. Civ.App.—Houston 1959, writ ref'd); *McMullen v. Coleman*, 135 S.W.2d 776 (Tex. Civ.App.—Waco 1940, no writ); *Hunt v. Ziegler*, 271 S.W. 936 (Tex.Civ.App.—San Antonio 1925), affirmed, 280 S.W. 546 (Tex. Comm'n App.1926, judgment adopted); Restatement, Second, Torts § 885; Hodges, Contribution and Indemnity Among Tortfeasors, 26 Texas L.Rev. 171 (1947).

Schering should be entitled to a credit for any amount of the $265,000 settlement that was in payment for plaintiff's loss of hearing. Schering should not be entitled to a credit for any payments made by the doctors for distinct or divisible injuries unrelated to the loss of hearing.

We hold that, under the peculiar facts of this case, an issue of fact existed, for determination by the jury, as to what amount, if any, was paid to plaintiffs by Dr. Holt and Dr. Edwards for Mr. Giesecke's loss of hearing. The court erred in excluding the tendered evidence regarding the settlement agreement and the payment of $265,000. We hold that such error requires that the case be reversed and remanded for a new trial. Schering's other points of error need not be discussed.

The judgment of the trial court is reversed, and the cause is remanded for trial.