UNIVERSAL SERVICES COMPANY, INC., Appellant,

v.

Huy Hieng Khaouv UNG, individually, and as Next Friend of Bun Hourk Ung, Bun Ly Ung, & Thaeng Ung, Minors, and Bun Chay Ung, Appellees.

No. B14–93–00026–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 28, 1994.

Rehearing Denied Sept. 1, 1994.

Mark T. Price, George Jackson, Jeff Nobles, Lynne Liberato, Alene Levy, Houston, for appellant.

James B. Lewis, Arthur Glover, Ronald P. Schramm, Houston, for appellees.

Before SEARS and LEE, JJ., and MORSE, Former J. (Sitting by Designation)

## MAJORITY OPINION

SEARS, Justice.

This is an appeal from a judgment awarding appellees $2,500,000.00 in punitive damages in their worker's compensation wrongful death action. Appellant raises eight points of error. We affirm.

Bun Meng Ung was struck and killed by a trailer that became disconnected from a truck as it traveled on Interstate 10. There was a large pothole in the road. When the truck hit the hole, the trailer became disconnected and veered into the workmen. Appellees sued appellant, the State of Texas, and the Hammerblow Corporation (the manufacturer the trailer hitch). Appellees settled with all defendants except appellant and went to trial solely on the issue of punitive damages.

At the time of the accident, Ung was working for appellant as a member of a crew cleaning debris from the shoulder of the road. Ung's crew was supervised by Lyle Strandlien. The area in which the crew was working was protected by a closed driving lane, marked by orange steel barrels filled with sand. Two one-ton buffer trucks and a dump truck were placed at the site to shield the workers from errant vehicles. There was conflicting testimony regarding the location of these trucks at the time of the accident. A lighted sign board on the back of each truck directed traffic away from the shoulder and the closed driving lane. Appellant had also placed signs ahead of the work site advising motorists of sweepers. The workers themselves wore brightly colored vests supplied by appellant.

■ Appellant first complains that the damage award violates the United States and Texas Constitutions because the procedures provided the jury no guiding standard and encouraged unlimited discretion. Appellant cites *Pacific Mutual Life Insurance Company v. Haslip*, 499 U.S. 1, 22–24, 111 S.Ct. 1032, 1046, 113 L.Ed.2d 1 (1991), which sets out three factors for determining whether there were meaningful constraints upon the jury's discretion in assessing exemplary damages. Those three factors are: (1) whether the jury instructions were adequate, (2) whether there was a post-trial review of the award, and (3) whether appellate review is based on a comparative analysis. 499 U.S. at 22–24, 111 S.Ct. at 1046. We turn first to the adequacy of the instruction given.

The instruction given the jury provided: "Exemplary damages" means an amount that you may *in your discretion* award as

an example to others as a penalty or by way of punishment. (emphasis added).

The purpose of punitive damages in Texas is to punish the wrongdoer, to set an example to others, and to compensate the victim. *See Hofer v. Lavender*, 679 S.W.2d 470, 474 (Tex. 1984). Instructions similar to the one submitted in this case have been upheld as not violative of the U.S. or Texas Constitutions. *See, e.g., Missouri Pac. R.R. Co. v. Lemon*, 861 S.W.2d 501 (Tex.App.—Houston [14th Dist.] 1993, writ requested). In *Lemon*, the jury was advised that "exemplary damages" means "an amount that you may in your discretion award as an example to others and as a penalty or by way of punishment, in addition to any amount that you may have found as actual damages." *Id.* at 525. A panel of this court held that, although this instruction was not as lengthy as the one upheld in *Haslip*, it similarly " 'enlightened the jury as to the punitive damages' nature and purpose, identified the damages as punishment for civil wrongdoing of the kind involved, and explained that their imposition was not compulsory'." *Haslip*, 499 U.S. at 19, 111 S.Ct. at 1044. Thus, this court held that the *Lemon* instruction satisfied due process constraints. *Lemon*, 861 S.W.2d at 525.

Appellant attempts to distinguish *Lemon* by pointing to the final phrase in the *Lemon* instruction, "in addition to any amount that you may have found as actual damages," which is not found in the instruction here. However, such a phrase was unwarranted in this case since no actual damages could be recovered due to the Worker's Compensation Act. Furthermore, we do not find that phrase crucial to the question whether the jury was given adequate guidance in assessing "punitive" damages.

In *Transportation Insurance Company v. Moriel*, 37 Tex.Sup.Ct.J. 450 (Feb. 2, 1994), the Texas Supreme Court discussed the constitutional issues surrounding awards of punitive damages. In *Moriel*, the court stated that Texas jury instructions are the only aspect of Texas procedure to meet or exceed the minimal requirements. *Id.* at 465 n. 25. In so stating, the court referred to the instructions given the *Moriel* jury which in-

cluded the factors set forth in *Alamo National Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981). By noting that "Texas jurors are instructed on the factors set forth in *Kraus* ...," the court implied that constitutional requirements are met by inclusion of these factors in an instruction. *See id.* However, such an implication does not necessarily suggest that the court would hold unconstitutional an instruction without the *Kraus* factors. In any event, the court expressly provided that we may not retroactively apply procedural standards adopted in *Moriel. See id.* at 463. Besides the questionable implication in *Moriel*, we find no case law indicating that this instruction violates due process. Thus, we find that the instruction in this case was not error.

■ We further find that there was extensive post-trial review of the award. Appellant filed a motion for new trial, or in the alternative, a motion for remittitur which included a constitutional challenge to the instruction regarding exemplary damages. Appellants complain that the trial court conducted no meaningful review of the award; however, the entire hearing on this motion focused on the award of exemplary damages. Appellant also complains that the trial court did not state on the record its reasons for refusing to interfere with the award. Like the courts in *Lemon* and *Haslip*, we find no constitutional violation by the trial court in failing to articulate its basis for the denial of the motion.

■ Appellate review of awards of exemplary damages involves consideration of the following factors:

(1) the nature of the wrong,

(2) the character of the conduct involved,

(3) the degree of culpability of the wrongdoer,

(4) the situation and sensibilities of the parties concerned, and

(5) the extent to which such conduct offends a public sense of justice.

*Kraus*, 616 S.W.2d at 910. The jury found that appellant committed gross negligence resulting in the death of Ung. The jury heard evidence that the supervisor was aware of the potential danger to his crew because he had observed a prior accident involving a loose trailer in approximately the same location a year before. Furthermore, the evidence was conflicting as to the placement of buffer trucks to protect the crew members, but there was evidence that the placement provided the crew no protection. The trial judge allowed evidence of the possible negligence of parties other than appellant, including the driver of the truck, the owner of the trailer, and the State's duties with respect to highway repair. The jury also learned that Ung left a wife and four children. We find this evidence sufficient to support the jury's award under the *Kraus* factors.

■ Appellant also asks that we utilize another factor, not included in the *Kraus* case, to determine whether the award is excessive. This factor is a comparison of the award to the defendant's net worth. In support of applying this test, appellant cites a number of California cases. Absent any Texas precedent for utilizing this analysis, we decline appellant's invitation to do so.

■ Finally, appellant argues that there can be no meaningful comparison between actual damages and exemplary damages in this case because there is no award of actual damages. Indeed, because this is a worker's compensation case, there can be no award of actual damages. Even so, it does not automatically follow that the award is excessive. Furthermore, an exact amount of actual damages is unnecessary to determine whether exemplary damages are reasonable. *Wright v. Gifford–Hill & Co.*, 725 S.W.2d 712, 714 (Tex.1987). We hold that the award is not excessive under the U.S. or Texas Constitutions.

■ In addition to arguing that the award is excessive, appellant argues that, as an employer, it was denied equal protection because punitive damages may be awarded against it without any jury award of actual damages. Appellant claims there is no rational basis for drawing a distinction between employers and other plaintiffs. We disagree. A plaintiff in a worker's compensation case cannot recover actual damages, but waives any common law or statutory rights of action

in exchange for the receipt of worker's compensation benefits. TEX.REV.CIV.STAT.ANN. art. 8306, §§ 3a, 5 (Vernon 1964) (repealed 1989). In actions for exemplary damages, it would be nonsensical to require a plaintiff to plead and submit issues on actual damages which cannot be recovered. *Wright,* 725 S.W.2d at 714. Furthermore, the lack of such a finding of actual damages does not necessarily result in excessive exemplary damages. Thus, we find a rational basis for allowing plaintiffs in worker's compensation to recover exemplary damages without having to plead, prove, and obtain jury findings of actual damages. We overrule point of error one.

■ In point of error two, appellant challenges the legal and factual sufficiency of the evidence supporting the jury's finding of gross negligence. In determining the legal sufficiency of the evidence, we may consider only the evidence and inferences that tend to support the jury's finding, disregarding all contrary evidence and inferences. *Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989). Where a party challenges the factual sufficiency of the evidence, we must consider all of the evidence and we may set aside the finding only if the evidence is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

■ The court's charge defined gross negligence as "such an entire want of care as to indicate that the act or omission in question was the result of conscious indifference to the rights, welfare, or safety of the persons affected." Gross negligence involves two components: (1) the act or omission, and (2) the defendant's mental state. *Moriel,* 37 Tex.Sup.Ct.J. at 458. Thus, gross negligence "differs from ordinary negligence with respect to both elements—the defendant must be 'consciously indifferent' and his or her conduct must 'create an extreme degree of risk'." *Id.*

■ The test for gross negligence contains an objective and subjective component. *Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 325 (1993). Objectively, the defendant's conduct must involve an "entire want of care," distinguishing it in degree or quantity from ordinary negligence. *Id.* Subjectively, the defendant must have acted with conscious indifference, which means he must have had actual knowledge that harm was a highly probable result. *Id.* By focusing on the defendant's mental state, this element "stresses a qualitative distinction from ordinary negligence." *Id.*

■ We turn next to the evidence supporting the finding of gross negligence. Lyle Strandlien, Ung's supervisor, testified that he had seen an accident in the same area approximately one year earlier involving a disconnected trailer. Therefore, he was aware of the potential danger of working in that area without adequate "buffer" protection. Trucks were parked behind the workers and were not moved forward to protect the workers as they moved forward. Although the exact location of these trucks was disputed, the jury obviously resolved the dispute against appellant. Because the scheduled work in this area was to last only 30 minutes, "buffers" were not moved and concrete barriers were not erected to further shield the workers.

Other witnesses and former employees of appellant testified that they would never place workers in the location of a previous accident without adequate protection. Mr. Little, a former supervisor of safety for appellant, and Mr. Jasper, a former operations manager for appellant, testified that: (1) the accident was foreseeable, (2) they would not have put workmen near the pothole that had caused the first accident, (3) placing the workmen in that place, in that manner, was "unreasonably dangerous" and "ultrahazardous," and (4) appellant should have put out advance warning signs and a flag person. Mr. Searcy, a former supervisor for appellant, testified that he was never given any safety manuals to read and that he would not have put workmen near the pothole. This evidence is sufficient for a jury to conclude that appellant acted with gross negligence. We overrule point of error two.

■ Appellant claims, in point of error three, that the evidence was "perhaps some evidence of ordinary negligence ...," and

that, without a jury instruction on ordinary negligence, the jury had insufficient guidance in evaluating the evidence presented. Appellant requested an instruction on ordinary negligence, but the trial court denied it, finding it not relevant to the issue of gross negligence. Appellant believes the jury needed this instruction to understand the difference in nature and degree between ordinary and gross negligence.

The trial court must submit questions, instructions and definitions that are raised by the pleadings and the evidence. TEX. R.CIV.P. 278. In a worker's compensation case, the trial court should not submit questions on ordinary negligence or actual damages because worker's compensation plaintiffs cannot recover for ordinary negligence. *Otis Elevator Co. v. Joseph*, 749 S.W.2d 920, 922 (Tex.App.—Houston [1st Dist.] 1988, no writ). We overrule point of error three.

In point of error four, appellant claims the trial court erred in instructing the jury that "gross negligence" does not mean "zero want of care." This oral definition was given during voir dire and there was no objection. Furthermore, appellant does not discuss this particular point of error in the body of its argument. In point of error five, appellant challenges the trial court's refusal to submit appellant's requested question inquiring whether the negligence of the settling defendants proximately caused the occurrence in question. Appellant presents no argument or authority regarding this particular point of error.

A point of error must be supported by argument and authorities to be properly before the court on appeal. *Hunter v. NCNB Texas Nat'l Bank*, 857 S.W.2d 722, 725 (Tex.App.—Houston [14th Dist.] 1993, writ denied). If a point of error is not supported by argument and authorities, it is waived. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 934 (Tex.1983). We hold that appellant has waived points of error four and five.

In point of error six, appellant challenges the trial court's refusal to allow cross-examination of plaintiffs, regarding claims against other parties, because the testimony was "inadmissible [sic] as a prior inconsistent statement and an admission against interest." The only argument appellant presents, besides restating this point of error, is the statement that appellant, "in its Bill of Exceptions No. 2, established that plaintiffs had previously contended that [the other defendants] were grossly negligent." Appellant also cites to TEX.R.CIV.EVID. 613(a), 803(24). We agree with appellees that the jury was advised of other negligent acts and the parties responsible for those acts. Because those other defendants had settled with appellees, and the settlement monies were paid for *actual* damages only, any testimony regarding appellees' prior causes of action against these defendants for "gross negligence" was also not relevant. We overrule point of error six.

In point of error seven, appellant asserts error in the trial court's refusal to allow a dollar for dollar credit for the prior monies received by plaintiffs from the settling defendants. Under the "one satisfaction rule," appellant contends it is entitled to a credit for amounts previously received by appellees in settlements with other defendants. Appellant requested such a credit in its Written Election of Settlement Credit, which the trial court denied.

In *Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d 1 (Tex.1991), the supreme court offered the following definition of the "one satisfaction rule:"

> The one satisfaction rule applies to prevent a plaintiff from obtaining more than one recovery for the same injury. Appellate courts have applied the one satisfaction rule when the defendants commit the same acts as well as when defendants commit technically differing acts which result in a single injury.

*Id.* at 7. *See also First Title Co. of Waco v. Garrett*, 860 S.W.2d 74, 78 (Tex.1993) (reaffirming "one satisfaction rule" and allowing credit for amounts received by plaintiff in settlement of separate lawsuit, involving common indivisible injury). Appellees argue that this rule applies only to actual damages that are awarded in satisfaction for the injuries sustained. Appellant contends, however, that because the *Sterling* court credited set-

tlement proceeds against damages after trebling (claims brought under Tex.Ins.Code Ann. art. 21.21 (Vernon 1981)), credit for the settlement monies in this case should be allowed against the exemplary damage award.

 Treble damages are punitive damages. *See Pace v. State,* 650 S.W.2d 64, 65 (Tex.1983). The "one satisfaction rule" is usually inapplicable to punitive damage awards because punitive damages do not concern compensation; they are, instead, intended to punish the wrongdoer and to deter future similar acts. *Ratner v. Sioux Natural Gas Corp.,* 719 F.2d 801, 804 (5th Cir.1983). Consequently, Texas courts historically allowed credits of settlement monies received as payment for compensatory damages only against actual damages. *See Providence Hosp. v. Truly,* 611 S.W.2d 127, 135 (Tex.Civ. App.—Waco 1980, writ dism'd). In cases brought under the Deceptive Trade Practices Act, the courts, however, allowed credit after the actual damages award was trebled. *See, e.g., id.* at 136.

In *Truly,* the court reasoned that deduction before trebling (where such statutory trebling is authorized) would frustrate the legislature's purposes for the trebling provisions, would discourage settlement, and prevent the plaintiff from recovering the full award required by statute. *Id.* Because the judgment in *Truly* expressly found that the settlement monies were paid "as actual compensatory damages," the court upheld the trial court's initial trebling of the award of $15,000.00 in actual damages and the trial court's credit of the settlement proceeds against *only* that part of the judgment representing compensatory damages (i.e., $15,-000.00). *Id.* at 137.

 The Texas Supreme Court subsequently overruled *Truly's* credit only against actual damages in *Sterling.* Instead, the supreme court approved the reasoning in *Schering Corp. v. Giesecke,* 589 S.W.2d 516 (Tex.Civ.App.—Eastland 1979, writ ref'd n.r.e.), a case involving only actual damages and no exemplary damages or trebling. *Sterling,* 822 S.W.2d at 10. Thus, in cases where actual damages awards may be trebled by statute, the supreme court allows credits of settlement proceeds against the *trebled sum,* even though this involves crediting the settlement proceeds against the punitive portion of the award. *See id.*

Despite appellant's contention that *Sterling* authorizes credits of settlement proceeds against awards of exemplary damages, we are not persuaded that the supreme court intended *Sterling* to extend to cases not involving statutory trebling. The policy reasons for crediting settlement monies against a trebled sum of damages are not present in cases that involve no statutory trebling. Furthermore, the courts have consistently held that non-settling defendants are entitled to credit against all sums paid by the settling defendants for the "damages resulting from the common acts of all tortfeasors." *Hill v. Budget Finance & Thrift Co.,* 383 S.W.2d 79, 82 (Tex.Civ.App.—Dallas 1964, no writ). *See also Paschall v. Peevey,* 813 S.W.2d 710, 712 (Tex.App.—Austin 1991, writ denied); *Schering Corp. v. Giesecke,* 589 S.W.2d 516, 519 (Tex.Civ.App.—Eastland 1979, writ ref'd n.r.e.).

In the instant case, the interlocutory order approving the settlement indicated that the settlement monies were paid for "actual compensatory damages only." Appellant is only entitled to credit for sums paid for damages resulting from common acts and the settling defendants paid no sums representing exemplary damages for gross negligence. Thus, we hold that appellant alone is responsible for its liability for gross negligence, and is not entitled to credit of the settlement monies received by appellees. We overrule point of error seven.

 In point of error eight, appellant challenges the trial court's refusal to disqualify appellees' attorneys for conflict of interest in having previously represented appellant in litigation. Because the firm representing appellees, Hirsch, Glover, Robinson, & Sheiness ("Hirsch Glover"), had represented appellant in prior litigation somewhat similar to the present case, appellant brought a motion to disqualify, which the trial court denied. Appellant then brought a motion for leave to file petition for writ of mandamus on this issue in

the First Court of Appeals, which the court denied in an unpublished opinion.

When presented with a motion to disqualify counsel, a trial court must determine whether the matters involved in the pending suit are *substantially related* to the factual matters involved in the prior suit. *NCNB Texas Nat'l Bank v. Coker*, 765 S.W.2d 398, 399–400 (Tex.1989) (orig. proceeding) (emphasis in original). The movant must establish a preponderance of the facts indicating this substantial relation between the two representations. *Id.* at 400. "Substantially related" means that the two matters are so related that it "creates a genuine threat that confidences revealed to his former counsel will be divulged to his present adversary." *Id.* To sustain this burden, the movant must cite evidence of specific similarities capable of being recited in the disqualification order. *Id.* If the movant meets this burden, the moving party is entitled to a conclusive presumption that confidences and secrets were imparted to the former attorney. *Id.*

In its motion to disqualify, appellant stated the following facts: appellees are represented by Marietta Maxfield and by the law firm of Hirsch Glover; appellant was represented by Paul Anderson of Hirsch Glover in litigation involving an incident on a highway, raising issues of highway safety and appellant's safety program; this prior litigation resulted in a settlement payment by appellant of $250,000.00; the incident upon which this prior suit was based occurred in 1984 and the incident upon which the instant case is based occurred in 1985; Hirsch Glover gained substantial knowledge during the prior representation regarding appellant's operations and safety procedures; and the insurance carrier for appellant in the prior suit is also the worker's compensation carrier for appellant.

Although appellant's description of the prior matter tends to show similarities, we do not find that appellant met its burden of showing such a *substantial relation* that it creates a genuine threat of Hirsch Glover's revelation of appellant's confidences to appellee. Further, appellant does not show that any specific fact brought out in the trial was learned by appellees' attorneys while they represented appellant. Therefore, we overrule point of error eight.

We affirm the trial court's judgment.

ROBERT E. MORSE, Jr., Former Justice, dissenting.

Because I would hold that the evidence is legally and factually insufficient to support the jury's finding of gross negligence and because the amount of punitive damages awarded appears excessive, I respectfully dissent.

The court's charge defined gross negligence as "such an entire want of care as to *indicate* that the act or omission in question was the result of conscious indifference to the rights, welfare, or safety of the persons affected." [Emphasis added.] This instruction permitted the jury to infer the subjective mental state of the defendant from evidence of the degree of care expended by the defendant on the affected person's behalf. However, in *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10 (1994), the supreme court clarified the standard to be used in determining whether evidence is legally sufficient to establish gross negligence and the award of punitive damages. The Court opined that, rather than focusing only on the "entire want of care" portion of the definition of gross negligence, courts must also look for evidence of the defendant's subjective mental state. *Id.* at 20.

Gross negligence has two components: (1) the act or omission, and (2) the defendant's mental state. *Id.* at 21. With respect to the first component, the defendant's conduct must create an extreme degree of risk; with respect to the second, the defendant must be consciously indifferent to the creation of that risk. *Id.* I interpret *Moriel* as instructing that evidence probative of a want of care on the part of the defendant is not necessarily probative of the defendant's conscious indifference to the risk created by that want of care.

First, the evidence must *establish* that the defendant's behavior exposed the plaintiff to an extreme risk of harm. *Id.* Evidence of a remote possibility of serious injury or a high

probability of minor harm is insufficient to satisfy the "extreme risk" prong. *Id.* The defendant's act must be unjustifiable and likely to result in serious harm. *Id.* In determining whether the defendant's act involved an extreme degree of risk, we must examine the "events and circumstances from the viewpoint of the defendant at the time the events occurred, without viewing the matter in hindsight." *Id.* at 22.

Second, in addition to proving an extreme degree of risk, the plaintiff must *establish* that the defendant acted with conscious indifference, which means that he must have had actual knowledge that serious harm was a highly probable result. *Id.* This may be shown by circumstantial evidence. *Id.* Whether a reasonable person would have realized that his conduct created an extreme degree of risk is not the test. *Id.* Instead, the evidence must establish that the defendant had actual, subjective awareness of the risk and nevertheless proceeded in conscious indifference to the rights, safety, or welfare of others. *Id.*

In determining the legal sufficiency of the evidence, we consider only the evidence and inferences that tend to support the jury's finding, disregarding all contrary evidence and inferences. *Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989). If there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge fails. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987). "When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla...." *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex. 1983). Although we consider only *evidence* and inferences therefrom favorable to the jury's finding and disregard all contrary *evidence* and inferences, this does not mean that we disregard the undisputed or conclusively-established *facts.* This is so because the probative value of evidence is only determinable when viewed in the factual milieu to which it relates. In light of *Moriel,* for evidence to be legally sufficient to support a gross negligence finding, the evidence must be probative of both an extreme risk of harm

*and* the subjective conscious indifference of the defendant. Viewed in the undisputed factual context, I believe that the Ungs' evidence of gross negligence falls short of legal sufficiency on both counts.

It was undisputed that Bun Meng Ung was struck and killed by a trailer that became disconnected from a truck as it traveled westbound on Interstate 10 near the Loop 610 interchange. There was a "bad spot" in the road, consisting of a raised area in the middle lane with three holes. An expert estimated that the holes were approximately two inches deep and one to two feet wide. The trailer hitch was a clamp-type hitch that opened and closed around a ball. The trailer hitch and ball were mismatched in that the hitch was a two-inch size and the ball one and seven-eighths. No safety chains were used; instead, the driver of the trailer had wrapped a coat hanger around the mouth of the hitch. When the truck hit the "bad spot," the trailer became disconnected and veered into the blocked-off lane striking Ung and another workman. The expert witnesses on causation testified that the accident resulted from a combination of factors: potholes in the road, mismatched trailer ball and hitch, lack of a safety chain on the trailer, and lack of protective barriers.

At the time of the accident, Ung was working for appellant as a member of a crew cleaning debris from the shoulder of the road. The crew was progressing along the roadway as the cleaning was accomplished. The area in which the crew was working was protected by a closed driving lane, lined with orange steel barrels filled with sand. Although there was conflicting evidence regarding the precise location of buffer trucks at the time of the accident, two one-ton trucks and a dump truck were on site to shield the workers from errant vehicles. Lights on the back of each truck directed traffic away from the work area. Appellant had also put up signs ahead of the work site advising motorists of sweepers. The workers themselves wore brightly colored vests supplied by appellant.

Lyle Strandlien, Ung's supervisor, testified that approximately one year earlier he had seen an accident in the same area involving a

disconnected trailer. However, there was no evidence regarding the exact location of this prior accident in relation to the one in question and no evidence on the primary cause or contributing causes of the prior accident. No one had been injured in the earlier mishap. Other witnesses and former employees of appellant testified that they would not have placed workers in the location of a previous accident without adequate protection, advance warning signs, and a flag person.

This evidence, while perhaps sufficient to show ordinary negligence, is not legally sufficient to establish gross negligence. Certainly, there is always a risk of harm to anyone on the shoulder of a busy freeway, and appellant obviously was aware of this risk and took precautions to protect its workers by closing a driving lane, placing warning signs, and parking large trucks as buffers. The road cleaning crew was constantly advancing along the roadway, and any failure to have the buffer trucks optimally positioned at the moment of the accident would not in itself amount to any more than ordinary negligence. Considering the circumstances as they existed at the time of the accident, I would hold that appellees failed to establish appellant's conscious indifference to an extreme risk of serious harm.

The Majority relies on the prior accident as evidence of appellant's actual knowledge of the risk of harm, but no evidence showed that the prior accident was caused by the same "bad spot" in the road or that appellant knew that the accident was so caused. There was no evidence that the prior accident involved a mismatched trailer ball and hitch or the failure to use a safety chain. No evidence showed that the prior accident occurred in the exact same location.

Thus, the evidence does not establish that appellant was actually aware of an extreme risk to its workers from disconnected trailers veering into the work area. Nor did appellant's actions, including the placement of warning signs, barrels closing a driving lane,

and the use of buffer trucks, exhibit a conscious disregard of that risk. Significantly, the probative value of Ung's evidence of conscious indifference of an extreme risk must be assessed in view of the undisputed fact that Strandlein, Ung's supervisor, was standing a mere ten feet from Ung when Ung was struck by the trailer. Considering the factual context of the accident and Strandlein's close proximity to Ung, I find the evidence legally insufficient to support a finding of gross negligence resulting from appellant's conscious indifference; also, such finding is factually insufficient in that it is so against the great weight and preponderance of the evidence as to be manifestly unfair or unjust.

Although not specifically raised by the appellant, I have an additional concern about the award of punitive damages where the jury verdict is not unanimous. Punitive damages are quasi-criminal in nature. *See Moriel,* 879 S.W.2d at 20 n. 10. Unanimous verdicts are required in criminal cases. TEX. CODE CRIM.PROC.ANN. art. 36.29 (Vernon Supp.1994). In civil cases, however, ten persons of a jury of twelve people may render a verdict. TEX.R.CIV.P. 292. In the instant case, ten jurors rendered the verdict finding appellant guilty of gross negligence and awarding punitive damages of $2.5 million. Because of the quasi-criminal nature of such damages, I believe that a strong argument can be made for the proposition that a unanimous verdict should be required for the imposition of punitive damages against a defendant.[1]

Furthermore, "excessive damages ... may adversely affect commerce, employment, and the public regard for the judiciary." *Missouri Pac. R.R. v. Lemon,* 861 S.W.2d 501, 531 (Tex.App.—Houston [14th Dist.] 1993, writ filed) (Brown, C.J., dissenting). In *Lemon,* Chief Justice Brown found excessive an award of $10,000,000 in exemplary damages and advocated the invocation of a court's constitutional fact finding powers to require a remittitur to an amount equal to the actual damages found. "Courts should

---

**1.** *But see In re V.R.S.,* 512 S.W.2d 350 (Tex.Civ. App.—Amarillo 1974, no writ) (held that rendition of verdict by ten jurors that child had engaged in delinquent conduct was constitutional even though alleged delinquent conduct was sufficient to constitute felony for which a unanimous verdict would be required to convict an adult).

be able to say 'This is just too much.'" *Id.* As did Chief Justice Brown in *Lemon,* I would so limit any exemplary damages in this case. No actual damages were awarded plaintiffs, but they did receive death benefits through appellant's workers compensation insurance, which could be considered tantamount to actual damages. Accordingly, I would appropriately limit any exemplary damage recovery.

Because there was no evidence of gross negligence, I would reverse the judgment. Finding for the appellant on a no evidence point, judgment could be rendered for appellant. However, at time of trial, the parties did not have the benefit of the *Moriel* decision clarifying the proper standard for the legal sufficiency of evidence of gross negligence. Therefore, the parties did not develop their positions in light of the new standard. In the interest of justice, I would remand for a new trial.