**UNIVERSAL SERVICES COMPANY, INC., Petitioner,**

v.

**Huy Hieng Khaov UNG, et al., Respondents.**

No. 94–1053.

Supreme Court of Texas.

Argued Feb. 8, 1995.

Decided June 15, 1995.

Rehearing Overruled Sept. 14, 1995.

George T. Jackson, Mark T. Price, Lynne Liberato, Alene Ross Levy, Jeffrey T. Nobles, Houston, for petitioner.

James B. Lewis, Arthur Glover, Houston, for respondents.

PHILLIPS, C.J., delivered the opinion of the Court, in which GONZALEZ, HIGHTOWER, HECHT, CORNYN, ENOCH, and OWEN, Justices, join.

We must determine whether legally sufficient evidence supports the jury's verdict that petitioner caused the death of respondents' decedent through gross negligence. The court of appeals found both legally and factually sufficient evidence to support the jury finding of gross negligence. 882 S.W.2d 460. We conclude, however, that the evidence is not legally sufficient to support the finding of gross negligence. We therefore reverse the judgment of the court of appeals and render judgment that respondents take nothing.

I

In February 1985, while working with a cleaning crew alongside Interstate 10 in Houston, Bun Meng Ung was struck and killed by a loose trailer. The hitch which attached the trailer to its truck had a 1⅞″ ball, rather than the 2″ ball for which the trailer was designed, and lacked adequate safety chains. When the truck hit a pothole, the trailer came off.

At the time of the accident, the right lane of the highway was blocked by orange steel barrel barricades filled with sand. Ung, working along the shoulder in the barricaded area clearing debris from the road, was employed by petitioner Universal Services Company ("Universal"), a state contractor. There were three large Universal trucks at the site, each bearing a flashing arrow sign directing traffic away from the workers. Although Lyle Strandlien, Ung's supervisor, testified that the trucks were being used as "buffer" or "shadow" trucks to shield the workers, the evidence most favorable to the verdict indicates that the trucks were not positioned so as to afford protection from passing traffic. Universal had placed signs in advance of the site advising motorists of "sweepers ahead," but the record does not disclose the number or exact location of these signs. Ung was wearing a brightly colored vest supplied by Universal. Ung's crew was scheduled to be in the area for about 30 minutes, but had been working only a few minutes when the accident occurred.

The pothole was approximately two feet wide and two to three inches deep, passing all the way across the lanes of traffic. About eight months to a year earlier, while working in the same area, Strandlien had witnessed another trailer come loose after a vehicle hit the same pothole. Fortunately, no one was injured on that occasion. But it did make Strandlien aware of the pothole, and he knew that his crew was working near it the day of Ung's death.

Ung's family sued Universal, the State of Texas, and the manufacturer of the trailer hitch. Although Ung was covered by workers' compensation insurance, his family

sought punitive damages from Universal for gross negligence, a claim not preempted under the Workers' Compensation Act. *See* Tex.Rev.Civ.Stat. art. 8306 § 5 (repealed by Acts 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(7) to (9), eff. Jan. 1, 1991). Plaintiffs subsequently settled with both the State and the hitch manufacturer, and the case proceeded to trial only against Universal.

At trial, the court's charge asked the jury three questions: 1) whether the gross negligence of Universal, if any, was a proximate cause of the accident; 2) if so, the appropriate amount of punitive damages; and 3) the manner in which any punitive award should be apportioned between the plaintiffs. Because Ung was covered by workers' compensation insurance, neither party requested, and the court did not submit, questions on ordinary negligence or actual damages. *See Wright v. Gifford–Hill & Co., Inc.,* 725 S.W.2d 712 (Tex.1987). Universal unsuccessfully requested, however, that both negligence and ordinary care be defined for the jury by instructions.

The jury found that Universal was grossly negligent, assessing punitive damages of $2.5 million dollars. The trial court rendered judgment on the jury's verdict.

A divided court of appeals affirmed. The court found legally and factually sufficient evidence of gross negligence, and it concluded that the $2.5 million punitive award was not excessive. 882 S.W.2d at 464–65. The court also held that the trial court did not err in refusing to define negligence and ordinary care for the jury, as these issues were not material to plaintiffs' theory of recovery. *Id.* at 466. Finally, the court rejected Universal's argument that the trial court procedures used to assess punitive damages denied Universal due process of the law by allowing the jury unlimited discretion. *Id.* at 463–64.

## II

■ Universal first argues that the trial court erred by refusing to define "negligence" and "ordinary care" for the jury. Universal contends that these definitions were necessary as a "reference point for distinguishing gross negligence from ordinary negligence." Omitting these instructions, according to Universal, encouraged the jury to infer gross negligence from evidence tending to establish only ordinary negligence.

■ Respondents argue that Universal failed to preserve this complaint. We agree. Although Universal requested definitions of negligence and ordinary care, these requests were made at the same time as a requested issue regarding the negligence of various non-parties.[1] Thus, it was not apparent either from Universal's argument to the trial court or from the context of the request that Universal considered these definitions necessary to the gross negligence issue. The trial court could have easily concluded that Universal desired the requested definitions only in connection with the negligence question. While it is not always necessary for a party to explain the reasons for requested jury questions and instructions in order to preserve error if the requests are refused, in this case we conclude that Universal's request did not make clear to the trial court the nature of its present complaint and thus did not preserve error. *See State Dep't of Highways v. Payne,* 838 S.W.2d 235, 241 (Tex.1992). Thus, we do not reach the issue of whether the trial court erred by failing to submit definitions of negligence and ordinary care.

## III

■ Universal next argues that there is no evidence in the record that it acted with gross negligence. We agree.

The common law definition of gross negligence is as follows:

> Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it.

1. Universal requested a question inquiring about the negligence of the State, the driver of the truck, the owner of the trailer (who was a passenger in the truck), and the hitch manufacturer. Universal does not challenge the trial court's refusal to submit this question.

*Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 920 (Tex.1981).[2] We have recently emphasized that the test for gross negligence contains both an objective and a subjective prong. *See Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 21–22 (Tex.1994); *Wal–Mart Stores Inc. v. Alexander,* 868 S.W.2d 322, 326 (Tex.1993). Objectively, the defendant's conduct must create "an extreme degree of risk." *Moriel,* 879 S.W.2d at 22; *Wal–Mart,* 868 S.W.2d at 326. *See also Williams v. Steves Industries, Inc.,* 699 S.W.2d 570, 573 (Tex.1985). This component, being a function of both the magnitude and the probability of the potential injury, is not satisfied if the defendant's conduct merely creates a remote possibility of serious injury; rather, the defendant's conduct must create the "likelihood of serious injury" to the plaintiff. *Moriel,* 879 S.W.2d at 22. Subjectively, the defendant "must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others." *Moriel,* 879 S.W.2d at 23. Evidence of simple negligence will not suffice to prove either component of gross negligence. *See Wal–Mart,* 868 S.W.2d at 327.

The evidence on which respondents rely to support the jury's finding of gross negligence may be summarized as follows: Strandlien knew about the pothole, and its potential for danger, yet still allowed his crew to work in the area without taking additional precautions.[3] The Universal trucks, although intended as buffers, were not properly positioned to protect the workers. Universal also did not put out concrete barriers, or close off an additional lane of traffic, as it might have done.[4] Universal also did not utilize signs or a flagperson to warn motorists of the pothole or advise them to reduce speed. There was testimony that the absence of such warnings violated the Texas Highway Department's Manual on Uniform Traffic Control Devices, which provides standards for controlling traffic. Although Universal was required by its contract with the State to comply with this manual, Universal did not provide it to Strandlien. Jerry Jasper, Universal's former operations manager, testified that a pothole severe enough to dislodge two trailers constituted an "ultra-

2. A slightly different definition of gross negligence is now provided by statute:

"Gross negligence" means more than momentary thoughtlessness, inadvertence, or error of judgment. It means such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected.

Tex.Civ.Prac. & Rem.Code § 41.001(5). The present suit, filed before the effective date of section 41.001(5), is not subject to the statutory definition. On April 20, 1995, the Governor signed legislation eliminating gross negligence as a basis for punitive damages, requiring that all such claims be based on either fraud, malice or, in wrongful death cases, gross neglect. *See* Act of April 20, 1995, 74th Leg., R.S., ch. 19, 1995 Tex.Sess.Law.Serv. 108 (Vernon) (to be codified as amendments to Chapter 41, Texas Civil Practice and Remedies Code). "Malice" requires either a specific intent to cause substantial injury, or a conscious disregard of an extreme degree of risk. *Id.* § 1. The definition of gross neglect mirrors the latter definition of malice. *Id.* This legislation takes effect September 1, 1995, and applies only to causes of action that accrue on or after that date.

3. Strandlien testified as follows:

Q: When you went by and did your survey that morning, did you identify the fact that you were going to have to work in this area where the debris was for about 30 minutes and that this area was adjacent to this bad spot that you had seen the trailer come loose before?

A: Yeah. I knew at the time in the morning what we were going to have to be working on here.

Q: And that, at least for that 30 minutes that you told us earlier that you anticipated it would have taken to clean the debris in that particular barrelled-off area, that you would be working next to this bad spot where you'd seen the trailer come loose eight months before?

A: Correct. I was aware of that. That spot was there.

Q: So, you certainly recognized the potential that an accident or incident similar to what you had seen eight months before could occur again. Is that a fair statement?

A: Correct. You never know.

4. Strandlien testified that portable concrete barriers were available, and would have been used had the crew been scheduled to remain in the area for an extended period of time, rather than 30 minutes. The barrels, which had been put out sometime earlier by someone other than Universal in connection with ongoing road construction, were intended only to direct traffic, not to shield workers from an errant vehicle.

hazardous situation" around which a crew should not work without additional precautions.

We do not review this testimony for some evidence of mere negligence on the part of Universal, or for some evidence of gross negligence on the part of any other actor. Our sole concern is whether there is some evidence of gross negligence on the part of Universal. Although Universal, through Strandlien, was aware of the specific hazards facing Ung, including the pothole in the road, there is no evidence that the risk created by Universal's conduct was so extreme as to create the "likelihood of serious injury." Although there is ample evidence that working alongside a busy highway is an inherently dangerous occupation, it is undisputed that Ung's crew was working in an area barrelled off from traffic, for a scheduled period of about thirty minutes, with sign trucks directing traffic away from the closed-off area. Even though the adjacent pothole had previously caused at least one other trailer to decouple, this evidence as a matter of law is not sufficient to establish "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *Burk Royalty,* 616 S.W.2d at 920. We accordingly hold that there is no evidence of the objective prong of gross negligence. *Cf. Port Terminal R.R. Assoc. v. Richardson,* 808 S.W.2d 501, 513 (Tex.App.—Houston [14th Dist.] 1991, writ denied) (inadequate flagging by railroad signalman was insufficient evidence of gross negligence even though he knew of danger to approaching cars).

For the foregoing reasons, we reverse the judgment of the court of appeals and render judgment that respondents take nothing.

GAMMAGE, Justice, joined by SPECTOR, Justice, dissenting.

The majority is plainly wrong to hold there is no evidence to support the jury's express finding of gross negligence. The evidence, viewed in the light most favorable to the jury's verdict, shows the risk was extreme and that the supervisor, familiar with the earlier trailer unhitching incident, knew specifically of that extreme risk but nonetheless subjected the employees to it. I dissent from the majority's holding that a single egregious prior incident is "no evidence" that an employer was grossly negligent in subsequently exposing its employees to a similar extreme risk of harm. The jury was entitled to conclude that once was more than enough.

The majority has departed from the general rule that to address a "no evidence" point we must take the evidence and inferences favorable to the jury verdict and disregard the rest. *See Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). The majority states that when reviewing a jury's finding of gross negligence, we must employ something more than the "some evidence" test, and would require a subjective test of "conscious indifference" and an objective test that defendant's conduct created "an extreme degree of risk." *See Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 21–22 (Tex.1994); *Wal–Mart Stores Inc. v. Alexander,* 868 S.W.2d 322, 326 (Tex.1993). Without entirely clarifying whether either the so-called objective "extreme degree of risk" factor or the subjective "entire want of care—conscious indifference" prong is unsupported by some evidence, the majority baldly concludes that "[e]ven though the adjacent pothole had previously caused at least one other trailer to decouple, this evidence as a matter of law is not sufficient." This conclusory holding is not supported by precedent or the facts of this case. I would hold there is evidence to justify the jury verdict under both prongs of the majority's test.

Ung's supervisor, Lyle Strandlien, testified he had seen a similar accident at the same site approximately one year before also involving a disconnected trailer. A huge pothole, still not repaired, was known to exist there. The jury could properly infer that the supervisor was aware of the potential danger of working that area without the "buffer" protection of construction obstruction cans or other devices, such as their trucks. There was evidence the trucks were parked behind the workers. The foreman did not have the trucks moved forward to protect the workers when the crew moved forward. The "buff-

ers" were not moved and concrete barriers were not erected to shield the workers because the scheduled work in this area was to last only 30 minutes. This is some evidence of a conscious indifference to an extreme risk of serious harm.

The majority omits discussion of the testimony offered by former employees of Universal. In general, they testified that "once was enough," and that they would never place workers in the location of a previous accident without adequate protection. Mr. Little, a former supervisor of safety for Universal, and Mr. Jasper, Universal's former manager of operations, testified that the accident was foreseeable, that they would not have put workmen near the pothole that had caused the first accident, that placing the workmen at that site in that manner was "unreasonably dangerous" and "ultrahazardous," and that Universal should have put out advance warning signs and a flag person. Mr. Searcy, a former supervisor for Universal, testified that he was never given any safety manuals to read, but that he would not have put workmen near the pothole.

This testimony is also some evidence that Universal was grossly negligent. The majority's conclusion that "once before is not enough" to constitute evidence of gross negligence usurps the jury's function and creates a standard for gross negligence below what the industry and this company, according to testimony of its own former employees, understood to be conscious indifference to an ultrahazardous situation.

There is no legitimate basis for this court to sit as a "super jury" to nullify jury findings it does not like. The majority invades the jury's province and function and substitutes its own fact findings. How many times would the foreman have had to ignore the danger to the crew for such action to constitute "some evidence" of conscious indifference? Two? Five? Ten? At what point would subjecting a worker to a known ultrahazardous risk become impermissible? I dissent from this torture of precedent that has as its only apparent goal the nullification of jury findings in order to allow an employer to escape liability for its unconscionable actions.