TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00657-CV






Roy Garcia Carrillo, Appellant



v.



Tony Eugene Berry, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. 98-12977, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING 







 Roy Garcia Carrillo appeals from the final judgment rendered against him in 
appellee Tony Eugene Berry's negligence suit. After a jury trial, the judgment awarded to Berry
$3506.37 in actual damages and pre-judgment interest and $8000.00 in punitive damages. In one
issue presented, Carrillo challenges the legal and factual sufficiency of the evidence to support the
award of punitive damages. We will affirm the trial-court judgment.


Factual Background



 This suit arises out of events occurring in the parking lot of the Warehouse Saloon.
Carrillo testified that he had been feeling ill for several days and had been taking Nyquil, a cough
medication. After work, he took a dose of the "drowsy" form of Nyquil. He went out to buy
more Nyquil. Then he stopped at the Warehouse Saloon for a tequila shot to "soothe his throat." 
While at the bar, he consumed at least one shot of tequila, six or seven rum-and-Cokes, and two
beers. He said he did not remember when he left the bar. He admitted taking a tip jar but said
he did not notice it had money in it; he took it because he liked the way it looked and his son had
a collection of glasses. After leaving the bar, he got into the van he was driving. He noticed a
"group of guys" coming toward him as he drove off; he said he panicked and kept going. He
testified that he was aware of the dangers of drinking and driving, such as problems with reaction
time, losing coordination, and an increased possibility of having an accident that could kill or
injure someone. He also testified that he usually drank a "quart a day" of alcohol, depending on
how stressful the day had been, and was familiar with the effects of alcohol on himself. 

 Joseph Salazar, a security guard at the Warehouse, testified that his responsibilities
included patron control, both inside the bar and in the parking lot. On the night in question, he
saw Carrillo grab and break a tip jar, take the money, go outside, jump in the van and "take off." 
Carrillo drove the wrong way in attempting to leave the parking lot, ended up at a dead end,
reversed the van's direction, skidded, and continued to attempt to leave. He saw the van hit
Berry.

 Tony Berry, also a security guard, similarly testified that he was responsible for
problems inside the club and in the parking lot. On the night in question, he was told that two
tip jars had been stolen and he went toward an exit. He heard the sound of breaking glass and
saw Carrillo leaving. He attempted to stop Carrillo by moving toward the van, but there was still
enough room in the lot for the van to pass him. The van ran over his foot. The impact threw him
into the side of the van, forcing his elbow violently into his ribs. He hit the mirror and was
knocked backward, "landing on my rear end." The van failed to make a necessary turn and ended
up at a dead end in the parking lot. The van then backed up rapidly, and if Berry had not
scrambled out of the way, Carrillo would have "hit me again."

 Scott Solomon, the investigating officer from the Austin Police Department,
testified that he administered an intoxilyzer test to Carrillo. The test registered a .14 blood
alcohol reading. Solomon described Carrillo at the scene as having bloodshot eyes, an intolerable
odor of alcohol on his person, slurred speech, staggering walk, and a "cocky attitude." 


 Discussion



Standard of Review


 In one issue, appellant contends the trial court erred in awarding punitive damages. 
He challenges the legal and factual sufficiency of the evidence to support the punitive damages
award. In deciding a no-evidence point, we consider only the evidence and inferences tending to
support the finding of the trier of fact and disregard all evidence and inferences to the contrary. 
See Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); Garza v. Alviar, 395
S.W.2d 821, 823 (Tex. 1965). We will uphold the finding if more than a scintilla of evidence
supports it. See Crye, 907 S.W.2d at 499; In re King's Estate, 244 S.W.2d 660, 661 (Tex.
1951). The evidence supporting a finding amounts to more than a scintilla if reasonable minds
could differ in their conclusions. See Crye, 907 S.W.2d at 499; Transportation Ins. Co. v.
Moriel, 879 S.W.2d 10, 25 (Tex. 1994); see generally William Powers, Jr. & Jack Ratliff,
Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515 (1991).

 When deciding an insufficient evidence point, we must consider and weigh all of
the evidence and should set aside the judgment only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. See Cain v. Bain, 709 S.W.2d 175, 176
(Tex. 1986); In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951); see also Pool v. Ford Motor
Co., 715 S.W.2d 629 (Tex. 1986); see generally William Powers, Jr. & Jack Ratliff, Another
Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515 (1991).


Punitive Damages


 To receive punitive damages, a claimant must prove by clear and convincing
evidence that the harm suffered resulted from malice. See Tex. Civ. Prac. & Rem. Code Ann.
§ 41.003(a)(2) (West 1997). The relevant definition of malice is:


(B) an act or omission:


 (i) which viewed objectively from the standpoint of the actor at the time
of its occurrence involves an extreme degree of risk, considering the probability
and magnitude of the potential harm to others; and


 (ii) of which the actor has actual, subjective awareness of the risk involved
but nevertheless proceeds with conscious indifference to the rights, safety or
welfare of others.



Id. at § 41.001(7)(B).


 The definition of malice in section 41.001(7)(B) mirrors the court's definition of
gross negligence in Transportation Insurance Company v. Moriel, 879 S.W.2d 10, 23 (Tex.
1994). See Mobil Oil Corp. v. Ellender, 968 S.W.2d 917, 921 n.2 (Tex. 1998). Therefore,
Moriel's legal sufficiency review of gross negligence is relevant to legal sufficiency review of
malice as redefined by section 41.001(7)(B). Id. In Moriel, the court explained that gross
negligence involves two components: (1) viewed objectively from the actor's standpoint, the act
or omission complained of must involve an extreme danger of risk, considering the probability
and magnitude of the potential harm to others; and (2) the actor must have actual, subjective
awareness of the risk involved, but nevertheless proceeds in conscious indifference to the rights,
safety, or welfare of others. See Moriel, 879 S.W.2d 10, 23 (Tex. 1994); Scott Fetzer Co. v.
Read, 945 S.W.2d 854, 870 (Tex. App.--Austin 1997), aff'd, 990 S.W.2d 732, 737 (Tex. 1999)
(adopting punitive damages analysis of court of appeals). 

 The objective component of gross negligence is a function of both the magnitude
and the probability of the potential injury. See Scott Fetzer, 945 S.W.2d at 870. It is not satisfied 
if the defendant's conduct creates only a remote possibility of serious injury. See id. (discussing
Universal Servs. Co., Inc. v. Ung, 904 S.W.2d 638, 641 (Tex. 1995)). To establish the
subjective component, the plaintiff must show that the defendant knew about the peril, but his acts
or omissions demonstrate that he did not care. See Louisiana-Pacific Corp. v. Andrade, 43 Tex.
Sup. Ct. J. 56, 57 (Oct. 21, 1999); Williams v. Steves Indus., Inc., 699 S.W.2d 570, 573 (Tex.
1985).

 When conducting a factual sufficiency review of a punitive damages award, the
court of appeals must detail all the relevant evidence and explain why that evidence supports or
does not support the punitive damages award. See Ellis County State Bank v. Keever, 915 S.W.2d
478, 479 (Tex. 1995); Moriel, 879 S.W.2d at 31. The court must consider: (1) the nature of the
wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer;
(4) the situation and sensibilities of the parties concerned; and (5) the extent to which such conduct
offends a public sense of justice and propriety. See Moriel, 879 S.W.2d at 31; Alamo Nat'l Bank
v. Kraus, 616 S.W.2d 908, 910 (Tex. 1981). 

 Carrillo contends that his "mere intoxication" and subsequent unlawful operation
of a motor vehicle do not alone suffice to subject him to an award of punitive damages. He
contends that his testimony that he "saw a group of guys coming at me . . . and . . . panicked"
shows that he was not acting with the requisite malice. We disagree.

 Carrillo correctly states that the fact an act is unlawful is not of itself grounds for
an award of punitive damages. See Continental Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444,
454 (Tex. 1996); ONI v. Swift, 990 S.W.2d 500, 503 (Tex. App.--Austin 1999, no pet.) (finding
of assault not enough to support award of punitive damages). However, there is much more
evidence in this cause than the simple commission of one illegal act.

 Carrillo consumed a great deal of alcohol at a time when he had been feeling ill and
regularly taking Nyquil, which can induce drowsiness. He arrived at the bar by automobile, a
large van, and intended to leave the same way. His van was parked in the club's parking lot. To
have an intoxicated person operate a vehicle in a parking lot in which people predictably would
be coming and going on foot creates a high risk of a serious injury due to a car-pedestrian
collision.

 Carrillo testified that he knew the dangers of drinking and driving and the increased
risk associated with that behavior. He also testified that he was in the habit of drinking a quart
of alcohol a night and knew alcohol's effects on him. Nevertheless, he admittedly left the bar in
such an inebriated state that he claims he did not notice there was money in the tip jars. He
intended to get in his van and drive away. In spite of his intoxicated state, he tried to exit the
parking lot rapidly. Even arriving at a dead end did not convince him to stop or slow down. 
Instead he reversed and went on rapidly. Carrillo's behavior also involved more misconduct than
drinking and driving; the jury was entitled to conclude that his reckless driving was motivated,
at least in part, by a desire to escape apprehension after having committed theft.

 Berry has presented more than a scintilla of evidence that satisfies both the
objective and subjective component of the test for legally sufficient evidence. In considering the
Kraus factors for factual sufficiency, we note that Texas has a strong public policy against
drinking and driving. Carrillo's testimony establishes a flagrant disregard for that policy and for
the danger he created for others by his behavior. The character of Carrillo's conduct was
egregious. The harm inflicted was physical injury, which could easily have been far more
serious. That it was not was due to luck, not to any mitigating actions on Carrillo's part. After
considering and weighing all the evidence, we hold that the judgment was not so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Accordingly, we
overrule the issue presented.


Cross-Issue


 Berry brings a cross-issue contending that this Court should sanction Carrillo for
bringing a frivolous appeal. See Tex. R. App. P. 45. In essence, Berry argues that Carrillo's
briefing is mediocre and indicates the appeal was taken for delay. We do not conclude that the
appeal was taken only for delay and without sufficient cause. We overrule Berry's cross-issue.


Conclusion


 We have overruled Carrillo's issue presented and hold that legally and factually
sufficient evidence supports the award of punitive damages. We have overruled Berry's cross-issue asking for sanctions. Accordingly, we affirm the trial-court judgment.



 

 J. Woodfin Jones, Justice

Before Justices Jones, Yeakel and Patterson

Affirmed

Filed: May 18, 2000

Do Not Publish



 the
court of appeals must detail all the relevant evidence and explain why that evidence supports or
does not support th