TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00368-CV






Hans M. Hughes, Appellant



v.



Donald Bergman, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 94-06680, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING 







 In this personal injury action, Hans M. Hughes ("defendant") appeals from a
judgment rendered for Donald Bergman ("plaintiff") that awarded actual damages of $50,500 and
exemplary damages of $25,003.50. In two points of error, defendant complains that (1)
insufficient evidence supports the jury finding of gross negligence, and (2) the trial court
improperly instructed the jury on negligence per se. We will affirm.


FACTUAL AND PROCEDURAL BACKGROUND


 Defendant rented a combination horse and cattle trailer from Windsor Trailer
Rentals ("Windsor"), located on the access road to IH-35 in Austin, Texas. Defendant requested
that the personnel at Windsor attach the trailer to his recently purchased pick-up truck. The rental
trailer was equipped with brake lights and turn signals; Windsor personnel offered to connect the
lights and signals to the electrical system of defendant's truck for a nominal charge. Defendant
refused Windsor's offer because he "wasn't comfortable" with the splicing that would have been
required to make the lights operate. Defendant testified that he felt the absence of brake lights and
turn signals presented only a minimal risk because he planned to tow a clearly visible trailer on
rural roads for only a short period during daylight hours.

 Between approximately 11:00 A.M. and 3:00 P.M., defendant used the trailer to
haul a friend's horse from a stable in Northeast Austin to a veterinarian's office in North Austin
and back to the stable. All of the driving appears to have been within the city limits of Austin. 
In the middle of the afternoon, as defendant was preparing to turn off of the access road of IH-35
into the Windsor driveway to return the trailer, plaintiff's car collided with the rear of the trailer,
causing property damage and physical injury.

 Defendant testified that shortly before the collision, he rolled down his window and
used hand signals to indicate that he was slowing and turning right into the Windsor driveway. 
At no point prior to embarking on his journey did defendant verify that these hand signals were
visible from behind the trailer. Plaintiff testified that as he followed defendant's trailer, he turned
his head slightly left for approximately one second while preparing to merge left; when he turned
his gaze forward, the trailer had almost come to a complete stop. Plaintiff also testified that
following the collision, he approached defendant's truck and found the driver's window rolled up.

 The sheriff's department accident report indicated that the absence of brake lights
and turn signals on the trailer that defendant was towing contributed to the accident. The report
also indicated that faulty "evasive action" by plaintiff might or might not have contributed to the
accident.

DISCUSSION


Exemplary Damages

 The award of exemplary damages was based on the jury's finding that defendant
was grossly negligent in driving without properly connected brake lights and turn signals. In his
first point of error, defendant argues that there is no evidence or insufficient evidence in the record
to support that finding. Specifically, he contends his conduct did not create an extreme risk of
harm.

 We may affirm a finding of gross negligence only if we are satisfied that there is
some evidence that the tortfeasor's conduct created an extreme risk of harm and that the tortfeasor
was aware of that risk. Wal-Mart Stores, Inc. v. Alexander, 868 S.W.2d. 322, 326 (Tex. 1993). 
In evaluating the legal sufficiency of the evidence, we must determine whether the evidence as a
whole rose to a level that would enable reasonable and fair-minded individuals to differ in their
conclusions on whether the defendant's conduct constituted gross negligence. Mobil Oil Corp.
v. Ellender, 968 S.W.2d 917, 923 (Tex. 1998). In no-evidence reviews, we consider all the
evidence in the light most favorable to the verdict. Associated Indem. Corp. v. Cat Contracting,
Inc., 964 S.W.2d 276, 285-86 (Tex. 1998). However, when considering a factual-sufficiency
challenge, we consider both the evidence that supports the verdict and that which is contrary
without favoring one over the other. Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445
(Tex. 1989).

 At the time of this accident, the Texas Legislature had defined "gross negligence"
as "more than momentary thoughtlessness, inadvertence, or error of judgment." See Act of June
3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.12, 1987 Tex. Gen. Laws 37, 44 (Tex. Civ. Prac. &
Rem. Code Ann. § 41.001(5), since amended). Instead, gross negligence required "such an entire
want of care as to establish that the act or omission was the result of actual conscious indifference
to the rights, safety, or welfare of the person affected." Id. In 1994 the Texas Supreme Court
explained that "gross negligence" includes two distinct elements:


(1) viewed objectively from the standpoint of the actor, the act or omission must
involve an extreme degree of risk, considering the probability and magnitude of the
potential harm to others, and (2) the actor must have actual, subjective awareness
of the risk involved, but nevertheless proceed in conscious indifference to the
rights, safety or welfare of others.


Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 23 (Tex. 1994) (emphasis added). (1) We will
review each of these elements independently.

 We begin by considering the requirement that, to constitute gross negligence, an
act or omission must create an extreme degree of risk. In the personal injury setting, the supreme
court has emphasized that "[the objective] component, being a function of both the magnitude and
the probability of the potential injury, is not satisfied if the defendant's conduct merely creates a
remote possibility of serious injury; rather, the defendant's conduct must create the 'likelihood of
serious injury' to the plaintiff." Universal Servs. Co. v. Ung, 904 S.W.2d 638, 641 (Tex. 1995);
see also Scott Fetzer Co. v. Read, 945 S.W.2d 854, 870 (Tex. App.--Austin 1997), aff'd, 42 Tex.
Sup. Ct. J. 264 (Dec. 31, 1998) (expressly approving court of appeals' analysis on gross
negligence issue).

 Defendant contends that driving a large, red trailer during daylight hours, "on roads
with little traffic," yet without brake lights or turn signals, does not create the likelihood of serious
injury needed to support a finding of gross negligence. We disagree. While another jury might
have agreed with defendant's arguments, we conclude that this jury had sufficient evidence to find
that defendant's conduct created an extreme degree of risk.

 First, the jury could have reasonably believed that the bright color and large size
of the defendant's trailer in no way mitigated the level of danger created by the absence of brake
lights and turn signals. Seeing a trailer and being able to recognize that the trailer is slowing down
are two different things, and it would have been reasonable for the jury to focus on this distinction. 
Additionally, the jury would have been reasonable in finding that defendant drove the trailer on
city roads during the heavily trafficked weekday lunch hours, significantly increasing the
likelihood of a collision. Finally, the jury could have reasonably believed that defendant took
insufficient steps to mitigate the likelihood of serious injury created when he towed a trailer
through city streets without brake lights and turn signals. Although defendant testified that he
used hand signals throughout his journey, he also acknowledged that he never verified that these
hand signals were visible from behind the trailer. Moreover, plaintiff testified that after the
collision he left his vehicle and found the driver's window of defendant's vehicle closed. This
testimony creates a reasonable inference that defendant did not in fact use hand signals, or at best
used them only sporadically. Based on this evidence, the conclusion that the defendant's conduct
created an extreme risk of harm is reasonable.

 In arguing that his conduct did not create a likelihood of serious injury to the
plaintiff, defendant draws a parallel between this case and Universal Services Co. v. Ung. In Ung,
the decedent was working alongside an interstate highway when a trailer passed over a pothole on
the highway, decoupled from the truck that was towing it, and struck him. About eight months
prior to the accident, a company employee had witnessed a similar accident caused by the same
pothole. On that basis, a jury found Universal's conduct grossly negligent and awarded punitive
damages. The supreme court reversed the punitive damage award, holding that there was no
evidence that the risk posed by the pothole created a likelihood of serious injury. Ung, 904
S.W.2d at 642. In reaching this conclusion, however, the court was careful to point out the
undisputed evidence that decedent's crew "was working in an area barrelled off from traffic, for
a scheduled period of about thirty minutes, with sign trucks directing traffic away from the closed-
off area." Id.

 Defendant's conduct in the present case can be distinguished from that in Ung. 
First, the risk of being rear-ended when one drives a car without brake lights seems markedly
higher than the risk of a trailer hitting a pothole, decoupling, and striking a road worker. Also
important, however, are the differences between the conduct of the defendant in Ung and
defendant here. As the supreme court pointed out in Ung, Universal Services Company
undisputably took steps to control the environment in which the accident occurred. In this case,
the jury was entitled to believe that defendant did not use hand signals or any other means of
mitigating the risk created by the absence of brake lights. Additionally, whereas the incident in
Ung revolved around an isolated pothole, defendant's conduct in this case took place on
unpredictable, uncontrolled city streets. For these reasons, we do not consider Ung to be
controlling.

 To affirm the jury's finding of gross negligence, we must also find sufficient
evidence that defendant knew of the extreme risk created by his conduct and consciously
disregarded this risk. As the supreme court has explained, the requirement of conscious
indifference would be superfluous unless it required proof that the defendant had actual subjective
knowledge of an extreme risk of serious harm. Moriel, 879 S.W.2d at 22. However, proof of
the defendant's state of mind may be based on circumstantial evidence. Id. at 23; Williams v.
Steves Indus. Inc., 699 S.W.2d 570, 573 (Tex. 1985).

 The record demonstrates that defendant recognized that hauling a trailer without
brake lights and turn signals created an element of additional risk that would not have been present
had the trailer's brake lights and turn signals been connected. Defendant maintains, however, that
he believed this risk was minimal. As discussed above, plaintiff produced sufficient evidence for
the jury to find that the risk created by defendant's conduct was objectively extreme. In the same
manner, there was legally and factually sufficient circumstantial evidence for the jury to disbelieve
defendant's testimony and find that, in addition to recognizing a risk, defendant must have
recognized an extreme risk.

 In summary, driving on city roads creates an inherent risk of injury. We believe
that driving on city roads without brake lights or turn signals significantly increases the chances
of a collision, creating an extreme risk of danger and the likelihood of serious injury. From the
evidence, the jury could believe that defendant took virtually no steps to mitigate this extreme risk
of danger. Moreover, the jury was presented with sufficient circumstantial evidence to support
a finding that defendant recognized the extreme risk of harm that his conduct was creating and
consciously disregarded that risk. Accordingly, the jury was entitled to find defendant grossly
negligent. Defendant's first point of error is overruled.


Negligence Per Se

 In his second point of error, defendant contends the district court erred by
instructing the jury that (1) the law required the trailer hauled by defendant to be equipped with
working brake lights and turn signals, and (2) the failure to maintain these lights and signals
constituted negligence per se. (2) Defendant argues that the trailer in question was an "implement
of husbandry," hence exempt from the State transportation code provisions requiring working
brake lights and turn signals. See Tex. Rev. Civ. Stat. Ann. art. 6701d, § 108(c) (West 1977). 
For the following reasons, we conclude that the trial court properly classified the trailer as an
ordinary vehicle and did not err in instructing the jury on negligence per se.

 In every case involving negligence per se, the threshold questions are whether the
plaintiff belongs to the class that the statute was intended to protect and whether the plaintiff's
injury is of a type that the statute was designed to prevent. See Perry v. S.N., 973 S.W.2d 301,
305 (Tex. 1998). If these threshold questions are answered affirmatively, we must still determine
whether imposing tort liability for violations of that statute would be "fair, workable, and wise." 
Perry, 973 S.W.2d at 306. In this inquiry, we are guided by various factors, such as: (1) whether
the defendant would have owed the plaintiff a common law duty absent the statute, see id. at 307;
Praesel v. Johnson, 967 S.W.2d 391, 395 (Tex. 1998); (2) whether the statute clearly defines the
prohibited or required conduct, see Perry, 973 S.W.2d. at 307; (3) whether applying negligence
per se to the conduct would create liability without fault, see id. at 308; Praesel, 967 S.W.2d at
395; (4) whether negligence per se would impose liability disproportionate to the gravity of
defendant's conduct, see id.; and (5) whether plaintiff's injury flowed directly or indirectly from
violation of the statute, see id.; Carter v. William Sommerville & Son, Inc., 584 S.W.2d 274,
278-79 (Tex. 1979).

 Defendant does not dispute that plaintiff was a member of the class that the statute
in this case was designed to protect. Nor does defendant contest that the injury suffered by
plaintiff is the type that the statute sought to prevent. Rather, defendant contends his conduct was
not prohibited by statute, rendering the trial court's negligence per se instruction inappropriate. 
We disagree. Article 6701d, section 108 of the Texas Revised Civil Statutes, in effect at the time
of the accident, provides that "[i]t is a misdemeanor for any person to drive or move . . . on any
highway any vehicle or combination of vehicles which . . . is not at all times equipped with such
lamps and other equipment in proper condition and adjustment as required in this Article . . . ." 
Tex. Rev. Civ. Stat. Ann. art. 6701d, § 108(a) (West 1977). The statute subsequently provides
that "every motor vehicle, trailer, semitrailer and pole trailer shall be equipped with two (2) or
more stop lamps . . .", id. art. 6701d, § 118(a), and electric turn signals, id. art. 6701d, § 118(b). 
Thus, state law generally requires that trailers such as the one towed by defendant be equipped
with functioning brake lights and turn signals. However, the statute exempts from the above
provisions several different categories of vehicles, including "implements of husbandry." Id. art.
6701d, § 108(c). Defendant does not deny towing a trailer without brake lights and turn signals
on June 4, 1992; rather, he argues that his conduct fell within the exception provided for
implements of husbandry. We must first decide whether defendant's conduct fell within the
parameters of this exception.

 Article 6701d, section 2(g) defines "implement of husbandry" as "every vehicle
designed and adapted for use as a farm implement, machinery or tool as used in tilling the soil,
but shall not include any passenger car or truck." Tex. Rev. Civ. Stat. Ann. art. 6701d, § 2(g)
(West 1977). It would be fair to read the phrase "as used in tilling the soil" to apply uniformly
to "farm implement," "machinery," and "tool." Under this narrow reading of the definition, the
trailer in this case could not be an "implement of husbandry" because it was not designed or used
to till the soil. A broader reading of the definition would construe the "as used in tilling the soil"
language to apply only to "tool," leaving open the possibility that the trailer was either
"machinery" or a "farm implement." Even if this broader reading is proper, however, the result
here is unchanged. "Machinery" generally denotes objects used to process materials or perform
specific functions; a trailer would not be naturally described as "machinery." Black's Law
Dictionary defines "implements" as "such things as are used or employed for a trade." Black's
Law Dictionary 754 (6th ed. 1990). Thus, "farm implement" seems to denote an object designed
or used for farming. The trailer in this case was neither designed for nor used in connection with
farming, a fact conceded by defendant's counsel at trial. While the trailer could conceivably have
been used in a farming operation, this was not its primary use or purpose on the facts as they
appear in the record. Thus, under even the broadest natural reading of the statutory definition,
the trailer in this case could not be classified as an implement of husbandry.

 This result is further supported by Texas case law. In construing "implement of
husbandry" as it has been used in connection with other pieces of Texas legislation, courts have
focused on the primary use or purpose of the items in question. This approach has quite naturally
led to case-by-case factual analysis. In Smith v. McBryde, the court declared that "implements of
husbandry" include "all implements used by the farmer in conducting his farming operations . .
. ." Smith v. McBryde, 173 S.W. 234, 235 (Tex. Civ. App.--San Antonio 1915, no writ). 
Similarly, the Texas Court of Criminal Appeals has construed the phrase in the context of article
827(a), section 3(a) of the Texas Civil Statutes, which exempted from length limitations placed
upon motor vehicles implements of husbandry temporarily propelled or moved upon the public
highways. Reaves v. State, 50 S.W.2d 286, 287 (Tex. Crim. App. 1931). The court stated that
"[a]n implement of husbandry is something necessary to the carrying on of the business of
farming, etc., without which the work cannot be done." Id. Finally, in discussing article 6675a-1
of the Revised Civil Statutes, which governs vehicle registration and provides an exemption from
registration for "implements of husbandry," the Attorney General declared that the test was one
of primary design and primary use or purpose, concluding: "It is fundamental then, that whether
a vehicle is an 'implement of husbandry' must be determined by the primary design and primary
use or purpose to which the vehicle is put and turns on the 'facts of any particular case.'" Op.
Tex. Att'y Gen. No. M-1254 (1972); see also Op. Tex. Att'y Gen. No. JM-718 (1987).

 These cases and opinions indicate that the purpose underlying exemptions for
implements of husbandry appears to have been protection of the needs of farmers and ranchers,
specifically protection of the equipment that they require to maintain their operations. While it
is conceivable that under appropriate circumstances a rental trailer could satisfy this requirement,
see Hickman v. Hickman, 234 S.W.2d 410, 414 (Tex. 1950) (classifying farmer's trailers that
were intended to be used to haul cotton to gin as implements of husbandry), the trailer in this case
was not being used for ranching or farming purposes. Defendant essentially asks this Court to
declare that any trailer that could be used for agricultural or ranching purposes is exempt from the
equipment requirements outlined in the Texas Transportation Code even when it is not being so
used. This we decline to do.

 Having found that the trailer in this case was an ordinary vehicle and that defendant
violated Article 6701(d), section 108 of the Texas Revised Civil Statutes by towing the trailer
without functioning brake lights, we turn to whether it would be appropriate to assign tort liability
for violation of the statute. In Perry, the supreme court recognized that the overwhelming
majority of its negligence per se cases had involved violations of traffic statutes. Perry, 973
S.W.2d at 306. In such cases, the defendant already owes the plaintiff a common law duty to act
as a reasonably prudent person would act. Id. Applying a negligence per se standard in cases
involving violations of traffic statutes does not cause a great change in the law. Id. In this case,
the traffic statute that defendant violated clearly defined the required conduct. Additionally,
violation of the statute directly contributed to causing the accident, and application of a negligence
per se standard will not create liability without fault. In light of these factors, we believe that
imposition of tort negligence for violation of this traffic statute was appropriate. See Carter, 584
S.W.2d at 278 (summarizing cases in which Texas courts have found violations of traffic statutes
to constitute negligence per se).

 We overrule defendant's second point of error.


CONCLUSION

 For the reasons discussed above, we affirm the trial court's judgment.



 

 J. Woodfin Jones, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: February 25, 1999

Do Not Publish

1. The legislature codified the cited language in 1995. See Tex. Civ. Prac. & Rem. Code
Ann. § 41.001(7)(B) (West 1997).
2. In its charge, the trial court instructed the jury that "[t]he violation of a law is negligence
in itself. The law forbids any person to move on any highway a trailer which is not at all times
equipped as required by law. . . . The law required this trailer to be equipped with stop lights and
turn-signals that were working."


estion. This approach has quite naturally
led to case-by-case factual analysis. In Smith v. McBryde, the court declared that "implements of
husbandry" include "all implements used by the farmer in conducting his farming operations . .
. ." Smith v. McBryde, 173 S.W. 234, 235 (Tex. Civ. App.--San Antonio 1915, no writ). 
Similarly, the Texas Court of Criminal Appeals has construed the phrase in the context of article
827(a), section 3(a) of the Texas Civil Statutes, which exempted from length limitations placed
upon motor vehicles implements of husbandry temporarily propelled or moved upon the public
highways. Reaves v. State, 50 S.W.2d 286, 287 (Tex. Crim. App. 1931). The court stated that
"[a]n implement of husbandry is something necessary to the carrying on of the business of
farming, etc., without which the work cannot be done." Id. Finally, in discussing article 6675a-1
of the Revised Civil Statutes, which governs vehicle registration and provides an exemption from
registration for "implements of husbandry," the Attorney General declared that the test was one
of primary design and primary use or purpose, concluding: "It is fundamental then, that whether
a vehicle is an 'implement of husbandry' must be determined by the primary design and primary
use or purpose to which the vehicle is put and turns on the 'facts of any particular case.'" Op.
Tex. Att'y Gen. No. M-1254 (1972); see also Op. Tex. Att'y Gen. No. JM-718 (1987).

 These cases and opinions indicate that the purpose underlying exemptions for
implements of husbandry appears to have been protection of the needs of farmers and ranchers,
specifically protection of the equipment that they require to maintain their operations. While it
is conceivable that under appropriate circumstances a rental trailer could satisfy this requirement,
see Hickman v. Hickman, 234 S.W.2d 410, 414 (Tex. 1950) (classifying farmer's trailers that
were intended to be used to haul cotton to gin as implements of husbandry), the trailer in this case
was not being used for ranching or farming purposes. Defendant essentially asks this Court to
declare that any trailer that could be used for agricultural or ranching purposes is exempt from the
equipment requirements outlined in the Texas Transportation Code even when it is not being so
used. This we decline to do.

 Having found that the trailer in this case was an ordinary vehicle and that defendant
violated Article 6701(d), section 108 of the Texas Revised Civil Statutes by towing the trailer
without functioning brake lights, we turn to whether it would be appropriate to assign tort liability
for violation of the statute. In Perry, the supreme court recognized that the overwhelming
majority of its negligence per se cases had involved violations of traffic statutes. Perry, 973
S.W.2d at 306. In such cases, the defendant already owes the plaintiff a common law duty to act
as a reasonably prudent person would act. Id. Applying a negligence per se standard in cases
involving violations of traffic statutes does not cause a great change in the law. Id. In this case,
the traffic statute that defendant violated clearly defined the required conduct. Additionally,
violation of the statute directly contributed to causing the accident, and application of a negligence
per se standard will not create liability without fault. In light of these factors, we believe that
imposition of tort negligence for violation of this traffic statute was appropriate. See Carter, 584
S.W.2d at 278 (summarizing cases in which Texas courts have found violations of traffic statutes
to constitute negligence per se).

 We overrule defendant's second point of error.


CONCLUSION

 For the reasons discussed above, we affirm the trial court's judgment.



 

 J. Woodfin Jones, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: February 25, 1999

Do Not Publish

1. The legislature codified the cited language in 1995. See Tex. Civ. Prac. & Rem. Code
Ann. § 41.001(7)(B) (West 1997).
2. In its charge, the trial court instructed the jury that "[t]he viola