Opinion filed November 5, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed November 5,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-08-00230-CV 

                                                    __________

 

                             DIANE GARRETT, AS NEXT FRIEND OF

                                   CHEYENNE
GARRETT, Appellant

 

                                                             V.

 

                    PATTERSON-UTI
DRILLING COMPANY, L.P. AND

                                          RICKY
WHITE, Appellees

 



 

                                        On
Appeal from the 132nd District Court

 

                                                          Scurry
County, Texas

 

                                                    Trial
Court Cause No. 23051

 



 

                                                                   O
P I N I O N

 

This
is a wrongful death claim arising out of an on-the-job injury.  Diane Garrett,
as next friend of Cheyenne Garrett, filed suit against Patterson-UTI Drilling
Company, L.P. and Ricky White in Lubbock County.  The defendants challenged
venue, and the trial court transferred the suit to Scurry County.  The Scurry
County District Court granted Patterson=s
and White=s motions
for summary judgment.  We affirm.








                                                             I. 
Background Facts

 Brandon
Garrett was employed by Patterson and was assigned to a rig drilling a well in
Floyd County.  White was his tool pusher.  A jet became plugged, and while
trying to clear it by shaking the pipe string, the brake cammed over.  White
was able to break the brake back over, but the brake handle was bent in the
process.  The rig crew had previously removed a guard to inspect the brakes. 
White and another employee, Randy Greene, worked on the brake handle.  White
directed Brandon and two other employees to replace the brake guard.  The brake
handle fell on the accelerator, which released the clutch, and the spool began
to move.  Brandon was caught in the lines and spool and was fatally injured.

                                                                       II. 
Issues

Garrett
advances three issues on appeal.  First, Garrett contends that the trial court
erred by granting Patterson=s
and White=s motions to
transfer venue; second, that the trial court erred by granting Patterson=s summary judgment motion;
and third, that the trial court erred by granting White=s motion for summary judgment.

                                                                  III. 
Discussion

The
crux of the venue dispute is whether a wrongful death claimant can assert a
gross negligence claim against the decedent=s
co-employee when the employer has workers=
compensation insurance.  There is no dispute that White is a resident of
Lubbock County.  If Garrett can assert a claim against him, venue is proper in
Lubbock County.  If not, then there was no basis to maintain venue in Lubbock
County, and the Lubbock County District Court did not err by granting the
motions to transfer venue.  Patterson and White argue that the exclusivity
provisions of the Workers=
Compensation Act[1] preclude such
a claim.  Garrett disputes this argument but, alternatively, argues that, if
Patterson and White are correct, then the Act is unconstitutional. 

A. 
Is Venue Properly Before Us?








Garrett
also contends that procedural bars preclude our consideration of the
substantive venue issues, contending that venue was improperly challenged
because Patterson and White did not dispute that White was a resident of
Lubbock County and that venue was improperly determined because she was
required to prove a cause of action.  We disagree with Garrett=s premise that Patterson
and White were required to dispute that White was a resident of Lubbock County
to challenge venue.  If Garrett could not assert a claim against him, then his
residence is immaterial.  See In re Valetutto, 976 S.W.2d 893, 896 (Tex.
App.CAustin 1998, no
pet.) (trial court did not err by transferring venue when plaintiff lacked
standing to assert the only cause of action supporting venue in Travis
County).  We also disagree that Garrett was forced to prove a cause of action. 
For purposes of this review, we do not determine whether Garrett could prove a
claim against White but merely whether she could plead one B a question of law that
does not require the consideration of evidence and, therefore, does not require
Garrett to prove a cause of action.  See id. at 894 (plaintiff was not
required to prove the merits of its cause of action because the trial court
determined venue by resolving a question of law).

Garrett
also contends that Patterson and White were required to first challenge her
pleadings with a special exception.  Again we disagree.  Patterson and White
were not challenging a defect, omission, obscurity, duplicity, generality, or
other insufficiency in Garrett=s
allegations B the
matters described by Tex. R. Civ. P.
91.  Instead, they were challenging her alleged cause of action.  But even if
we are incorrect, Garrett has shown no harm because she has not identified how
she could have amended her pleadings to state a viable claim against White.  We
note also that this suit had been pending for over ten months before the
Lubbock County District Court transferred venue and that Garrett made no
attempt to amend her petition.

B. 
Does Garrett Have a Constitutionally Protected Cause of Action Against White?

Garrett
contends that the Texas Constitution assures her right to assert a claim for
punitive damages against White because it provides:

Every
person, corporation, or company, that may commit a homicide, through wilful
act, or omission, or gross neglect, shall be responsible, in exemplary damages,
to the surviving husband, widow, heirs of his or her body, or such of them as
there may be, without regard to any criminal proceeding that may or may not be
had in relation to the homicide.

 








Tex. Const. art. XVI, ' 26.  Garrett does not
contend that this provision creates a private cause of action but that it
renders the exclusivity provision of the Workers=
Compensation Act unconstitutional if it precludes her claim against White.[2] 
Garrett recognizes that the Act allows a claim against an employer but contends
that White individually is also liable and that, in light of the mandatory
language of Section 26, the Act cannot constitutionally preclude a gross
negligence cause of action against him.

When
determining the constitutionality of a statute, we begin with a presumption
that it is constitutional.  HL Farm Corp. v. Self, 877 S.W.2d 288, 290
(Tex. 1994); Spring Branch Indep. Sch. Dist. v. Stamos, 695 S.W.2d 556,
558 (Tex. 1985). Courts presume that the legislature Aunderstands and correctly appreciates the
needs of its own people, that its laws are directed to problems made manifest
by experience, and that its discriminations are based upon adequate grounds.@  Smith v. Davis,
426 S.W.2d 827, 831 (Tex. 1968) (quoting Tex. Nat=l Guard Armory Bd. v.
McCraw, 126 S.W.2d 627, 634 (Tex. 1939)).  The wisdom or expediency of a
law is for the legislature to determine, not this court.  Smith, 426
S.W.2d at 831.  Furthermore, the party challenging the constitutionality of a
statute bears the burden of demonstrating that the enactment fails to meet
constitutional requirements. Stamos, 695 S.W.2d at 558.

In
construing a state constitutional provision, Athe
fundamental guiding rule is to give effect to the intent of the makers and
adopters of the provision in question.@ 
Harris County Hosp. Dist. v. Tomball Reg=l Hosp., 283 S.W.3d 838, 842 (Tex. 2009). 
And, because any such provision is Aconstrued
in the light of the conditions existing at the time of adoption,@ its meaning Ais fixed when it is
adopted, and it is not different at any subsequent time.@  Cramer v. Sheppard, 167 S.W.2d 147,
154 (Tex. 1942) (orig. proceeding).  As Justice Holmes has written, to
understand a constitutional provision, Aa
page of history is worth a volume of logic.@ 
New York Trust Co. v. Eisner, 256 U.S. 345, 349 (1921).








History
makes clear that Section 26 was adopted to resolve ambiguities existing in the
statutory and common law of punitive damages.  Travelers Indem. Co. of Ill. v.
Fuller, 892 S.W.2d 848, 850 (Tex. 1995).  When wrongful death statutes were
first adopted, the question arose:  Did the statute create a new cause of
action in the heirs of the deceased or did it simply transmit the decedent=s right to sue?  Id.
at 851.  Shortly after Section 26 was adopted, Texas Courts held that it was
the latter, finding that Section 26 did not grant a punitive recovery
independent of a recognized claim for compensatory relief.  Id. (citing Ritz
v. City of Austin, 20 S.W. 1029 (Tex. Civ. App. 1892, writ ref=d)).  Consequently, Section
26 does not abrogate the common-law requirement of actual damages or extend a
right to seek punitive damages to those with no cause of action under the
Wrongful Death Act.[3]  Id.
at 852.

Because
Section 26 does not mandate any broader recovery than the decedent could have
obtained had he survived, numerous limitations on the heirs= ability to pursue a
punitive damage claim have been upheld.  For example, courts have limited or
barred wrongful death actions because of contracts executed by the decedent.  See
In re Labatt Food Serv., L.P., 279 S.W.3d 640, 644 (Tex. 2009); see
also Ross v. Union Carbide Corp., No. 14-07-00860-CV, 2009 WL 2589394, at
*5 (Tex. App.CHouston
[14th Dist.] 2009, n.p.h.) (decedent=s
release barred survivor=s
subsequent claim under Section 26 for punitive damages).

Garrett
distinguishes Fuller by arguing that Patterson=s position rests upon the proposition that
Brandon had no claim for actual damages against White due to the Workers= Compensation Act and that
this proposition reads too much into Fuller=s holding.  We do not reach this result by
simply finding that Brandon could not pursue a claim for actual damages against
White but because he waived the right to assert any claim against
White.  See Dickson v. Silva, 880 S.W.2d 785, 788 (Tex. App.CHouston [1st Dist.] 1993,
writ denied).  Waiver attaches because Brandon=s
decision to accept coverage is an election of remedies.  See Berry v. Gregg
Indus. Servs., Inc., 907 S.W.2d 4, 6 (Tex. App.CTyler 1994, writ denied) (employee who claims
or accepts workers=
compensation benefits has made an election of remedies and cannot pursue an
intentional tort claim against his employer or a co-employee).








Even
constitutional rights can be contractually waived.  See, e.g., In re
Prudential Ins. Co. of Am., 148 S.W.3d 124, 129-33 (Tex. 2004) (contractual
jury waivers do not violate public policy).  Because Brandon waived his right
to assert a claim against White had he survived, his heirs have no claim
against White for punitive damages B
notwithstanding Section 26.  Garrett did not plead a viable cause of action
against White.  The trial court, therefore, did not err by granting Patterson=s and White=s motions to transfer
venue.  Issue One is overruled.

C. 
Patterson=s
No-Evidence Motion for Summary Judgment.

Garrett
next argues that the trial court erred by granting Patterson=s no-evidence motion for
summary judgment.  No‑evidence motions are reviewed under the same
standard as a directed verdict.  King Ranch, Inc. v. Chapman, 118 S.W.3d
742, 750‑51 (Tex. 2003).  Accordingly, we review the evidence in the
light most favorable to the nonmovant and disregard all contrary evidence and
inferences.  Id.  A trial court must grant a proper no‑evidence
motion for summary judgment unless the nonmovant produces more than a scintilla
of probative evidence to raise a genuine issue of material fact on the
challenged element of the claim.  Tex.
R. Civ. P. 166a(i).

Patterson
filed a no-evidence motion and contended that there was no evidence that it was
grossly negligent.  Patterson attached deposition testimony to its motion.
Garrett correctly notes that we may not consider this evidence unless it
creates a fact issue.  See Binur v. Jacobo, 135 S.W.3d 646, 651 (Tex.
2004).  We do, however, consider the evidence tendered by Garrett, which
included complete copies of White, Greene, and Stroud=s depositions and a certified copy of OSHA=s report.      Gross
negligence consists of both an objective element and a subjective element. See
Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 785 (Tex. 2001).  To
establish gross negligence, a plaintiff must prove by clear and convincing
evidence (1) that, when viewed objectively, the defendant=s acts or omissions
involved an extreme degree of risk, considering the probability and magnitude
of the potential harm to others and (2) that the defendant had an actual,
subjective awareness of the risk involved but nevertheless proceeded with
conscious indifference to the rights, safety, or welfare of others. Tex. Civ. Prac. & Rem. Code Ann. ' 41.001(11) (Vernon 2008).








Objectively,
Patterson=s conduct
must involve an extreme risk of harm, a significantly higher threshold than the
objective reasonable person test for negligence.  Transp. Ins. Co. v. Moriel,
879 S.W.2d 10, 22 (Tex. 1994).  Viewed objectively from the actor=s standpoint, the act or
omission complained of must depart from the ordinary standard of care to such
an extent that it creates an extreme degree of risk of harming others.  Lee
Lewis Constr., 70 S.W.3d at 784‑86; Universal Servs. Co. v. Ung,
904 S.W.2d 638, 641 (Tex. 1995); Moriel, 879 S.W.2d at 21‑22. 
Extreme risk is a function of both the magnitude and the probability of the
anticipated injury to the plaintiff.  Moriel, 879 S.W.2d at 22.  Extreme
risk is not a remote possibility of injury or even a high probability of minor
harm but, rather, the likelihood of serious injury to the plaintiff.  Mobil
Oil Corp. v. Ellender, 968 S.W.2d 917, 921 (Tex. 1998).  The risk must be
examined prospectively from the perspective of the actor, not in hindsight.  Moriel,
879 S.W.2d at 23. AAn
act or omission that is merely thoughtless, careless, or not inordinately risky
cannot be grossly negligent.@ 
Id. at 22.

Garrett
argues that White was aware of the extreme danger of an employee being around
the drum while he attempted to repair the brake.  Garrett makes this point by
highlighting White=s
testimony that he repeatedly told the rig hands to stay away from the drum and
that, on one occasion, he pushed one of the rig hands away.  Garrett also
argues that White consciously ignored two safety procedures.  First, White did
not utilize a lockout/tagout procedure.  Second, White did not hang the blocks.

Lockout/tagout
procedures are utilized to disable machines or equipment to prevent unexpected
energization, start-up, or release of stored energy in order to prevent
injury.  See 29 C.F.R. '
1910.147(a)(3).  White testified that they could not utilize a lockout/tagout
procedure while they were working on the equipment because they needed to keep
the rig=s motors
running to hold up the suspended weight of the string.  The driller, Donnie Lee
Stroud, confirmed that it was necessary to keep the motors running.  Garrett
replies by pointing to an OSHA citation Patterson received for failure to
follow lockout procedures.  Patterson responds that an OSHA citation is no
evidence of negligence and that we may not consider it.  We need not resolve
this question because the record establishes that Patterson and OSHA entered
into a settlement agreement and that OSHA withdrew its allegation.  Because
Garrett presented no evidence that White could have utilized a lockout/tagout
procedure, his failure to do so is no evidence of gross negligence.








White
also denied that he could have hung the blocks.  He testified that, while they
were working on the brake handle, it would have been impossible to hang the
blocks because they could not operate the rig until it was repaired.  Stroud
did not know if it would have been possible to hang the blocks but testified
that it would have been more dangerous to do so because, with the brake handle
bent, they were unable to control the string weight.  Greene testified that it
would have taken 30-45 minutes to hang the blocks and that White told him that
doing so would have prevented the accident, but Greene did not testify that the
blocks could have been hung before the brake handle was repaired.[4]

Garrett
failed to offer evidence that the blocks could have been mechanically or safely
hung.  But if we assume Greene=s
testimony that it would have taken 30-45 minutes to hang them or that White=s statement that this would
have prevented the accident is some evidence that White=s decision not to hang the blocks created an
extreme risk of harm, then we must determine whether Garrett produced evidence
that White was subjectively aware of the risk but proceeded with conscious
indifference.  Unquestionably, White could have waited until after the brake handle
was repaired before replacing the drum cover.  White was aware of the risk of
being around the drum; was aware that the motors were on and that the blocks
were not hung; and knew that, while he and Greene were repairing the brake
handle, he could not see the drum.  If White had waited to replace the cover,
Brandon would not have been standing near the drum when the brake handle was
dropped.  Thus, Garrett produced evidence that White was aware of the risk.

White,
however, took steps to minimize the risk.  Before starting the repair, White
held a safety meeting.  The crew discussed not standing next to the drum. 
Brandon was personally warned several times to stay away from the drum.  The
employees responsible for replacing the cover were all warned to stay off the
drum.  White did not rush them but told them to take their time and to be
safe.  Garrett produced no evidence that White proceeded with conscious
indifference to Brandon=s
safety or welfare.  White=s
decision to replace the guard while he and Greene worked on the brake handle is
evidence of negligence.  But if Brandon had followed White=s instructions and stayed
off  the drum, this accident would have been prevented.  Cf. Diamond
Shamrock Ref. Co., L.P. v. Hall, 168 S.W.3d 164, 173 (Tex. 2005) (A[W]hat separates ordinary
negligence from gross negligence is the defendant=s
state of mind; in other words, the plaintiff must show that the defendant knew
about the peril, but his acts or omissions demonstrate that he did not care.@).  The trial court did not
err by granting Patterson=s
summary judgment motion.  Garrett=s
second issue is overruled.

 








D. 
White=s
Traditional Motion for Summary Judgment.

White
filed a traditional motion for summary judgment contending that Garrett=s claim against him was
barred by the exclusivity provision of the Workers= Compensation Act.  We have previously held
that Garrett had no viable cause of action against White.  Garrett=s third issue is overruled.

                                                                    IV. 
Holding

The
judgment of the trial court is affirmed.

 

 

RICK STRANGE

JUSTICE

 

November 5, 2009

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









     [1]Tex. Lab. Code Ann. '' 401.001-419.007 (Vernon 2006 & Supp. 2009).





     [2]Section 408.001
provides in part:

 

(a) Recovery of workers=
compensation benefits is the exclusive remedy of an employee covered by workers= compensation insurance coverage or a legal beneficiary
against the employer or an agent or employee of the employer for the death of
or a work-related injury sustained by the employee.

 

(b) This section does not prohibit the recovery of exemplary damages by
the surviving spouse or heirs of the body of a deceased employee whose death
was caused by an intentional act or omission of the employer or by the employer=s gross negligence.





     [3]Tex. Civ. Prac. & Rem. Code Ann. '' 71.001-.052 (Vernon 2008).





     [4]White did not
recall making this statement.  For purposes of our review, we assume that he
did.